IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARISSA SMITH,

      Plaintiff,                   JUDGE GRAHAM
                                   MAGISTRATE JUDGE KEMP

   vs.

LIFE INSURANCE COMPANY OF         CASE NO. 2:09-CV-0719
NORTH AMERICA,

      Defendant.

<u>OPINION AND ORDER</u>

This is an action for recovery of benefits filed pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U. S. C. § 1001 et seq., under § 1132(a)(1)(B) by plaintiff Marissa Smith ("Smith") against Life Insurance Company of North American ("LINA") and a counterclaim for overpayment of benefits by LINA under § 1132(a)(3)(B) against Smith. Smith's employer, Ortho Link Physicians Corporation[1] ("Ortho Link"), arranged for payment of benefits under its disability plan by purchasing an insurance policy from LINA. This matter is before the court on the parties' cross-motions for judgment on the administrative record.

I. Standard of Review

In <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989), the Supreme Court held that a denial of benefits

---

[1]Based on review of the administrative record ("AR"), it appears Smith's employer was also referred to as "Specialized Orthopedics and Sports Medicine." See e.g. AR 374. However, the name on the insurance policy is "Ortho Link Physicians Corporation." AR 230. For consistency, this court will use the name that is used on the insurance policy.

challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the more deferential arbitrary and capricious standard of review applies. In this case, LINA has the discretion to "interpret the terms of Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact." AR 247. Thus, the arbitrary and capricious standard of review applies.

The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 169 (6th Cir. 2003). Under the arbitrary and capricious standard, a determination by the plan administrator will be upheld if it is rational in light of the plan's provisions. Id.; Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996). When it is possible to offer a reasoned explanation for a plan administrator's decision based upon the evidence, that decision is not arbitrary and capricious. McDonald, 347 F.3d at 169; Davis v. Kentucky Fin. Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989). However, a district court's obligation to review the administrative record "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues" to avoid becoming "nothing more than rubber stamps for any plan administrator's decision[.]" McDonald, 347 F.3d at 172.

In reviewing the administrator's decision, the court is limited to a consideration of the evidence which was included in

2

the record before the plan administrator. See Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health & Welfare Trust Fund, 203 F.3d 926, 932 (6th Cir. 2000); Smith v. Ameritech, 129 F.3d 857, 863 (6th Cir. 1997).

"Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision." McDonald, 347 F.3d at 169. A plan administrator is not required to accord special weight to the opinions of the plaintiff's treating physician, or to offer an explanation when it credits reliable evidence that conflicts with a treating physician's evaluation. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834, (2003); Calvert v. Firstar Finance, Inc., 409 F.3d 286, 293 (6th Cir. 2005)("treating physician rule" does not apply in the ERISA context). "[I]f a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'". Black & Decker, 538 U.S. at 832.

An actual conflict of interest exists when an insurer both decides whether an employee is eligible for benefits and pays those benefits. Calvert, 409 F.3d at 292. "[C]ourts must consider that conflict as one factor among several" in determining whether the claim administrator abused its discretion in denying benefits. Cox v. Std. Ins. Co., 585 F.3d 295, 299 (6th Cir.

3

2009), <u>Whitaker v. Hartford Life & Accident Ins. Co.</u>, 404 F.3d 947, 949 (6th Cir. 2005).

<u>II. Policy Provisions</u>

Smith worked as an x-ray technologist at Ortho Link in Columbus, Ohio. AR 373-374. As an employee of Ortho Link, she was covered under the long term disability benefits insurance policy issued by LINA. AR 230-255.

Under the terms of that policy, an employee must satisfy the definition of disability found in the policy in order to qualify for benefits. Initially, to be deemed "disabled" an employee must be "unable to perform all of the material duties of *his or her regular occupation* . . . ." AR 236 (emphasis added). However, after receiving benefits for 24 months, the definition of disabled changes and becomes more strict. The employee is "disabled" if he or she is "unable to perform all the material duties of *any* occupation for which he or she may reasonably become qualified based on education, training or experience . . . ." AR 236 (emphasis added). Under the terms of the policy, an insured employee bears the burden of providing information or documents needed to determine whether benefits are payable or the actual benefit amount due. AR 246. "Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid." AR 240.

The insurance policy further provides that a disabled employee must be under "appropriate care of a Physician." AR 240. Under the policy, appropriate care means:

> the determination of an accurate and medically supported diagnosis of the employee's Disability by a Physician, or a plan established by a Physician of ongoing medical treatment and care of the Disability

that conforms to generally accepted medical standards, including frequency of treatment and care.

AR 251.

III. Administrative Record

As early as 2003, Smith began treatment with Dr. Gladstone McDowell. AR 537. Smith received treatment for chronic intractable neck and shoulder pain and headaches as well as degenerative disease. AR 503, 519, 537. In a series of notes by Dr. McDowell from 2004 and 2005, he indicated that her pain was not improving in response to a variety of treatments. AR 519 (noting in 2004 that her shoulder pain did not improve with facet blocks); AR 511 (noting in 2005 that her secondary myofascial pain syndrome was not responding to conservative management); AR 501 (noting in 2005 that a series of epidural steroid injections did not result in improvement). On August 30, 2005, Dr. McDowell noted that Smith's low back pain increased with prolonged standing, walking, or sitting. AR 503. In October, 2005, Smith stopped working at Ortho Link on the advice of Dr. McDowell. Her last day of work was October 13, 2005. AR 848.

Plaintiff applied for and received long-term disability benefits under the LINA policy. AR 296.[2] Long-term benefits were approved and paid from January 2006 through January 2008 under the definition of disability in the policy that Smith was "unable to perform all the material duties of . . . her regular occupation." AR 236, 278, 296, 593.

_____

[2]Although benefits were initially denied, Smith appealed that determination and was ultimately awarded benefits. AR 296, 593.

5

Smith supported her application for long-term disability benefits with a physical capacity examination from September 1, 2005, ordered by Dr. McDowell, indicating she was only capable of performing "sedentary" work, AR 615-620, which was inconsistent with the requirements of her own job as a x-ray technician. She also submitted a physical ability assessment from Dr. R. Earl Bartley, a physician at her employer, indicating that she could not reach overhead or below the waist, was limited to lifting and carrying 10 pounds, could not climb stairs or ladders, could not crawl, could not work extended shifts, and could not use her lower extremities for foot controls. AR 808-809. The assessment also indicated she could occasionally use her right or left hand for simple grasping, occasionally push or pull up to 10 pounds, and occasionally stoop, kneel, or crouch. AR 808-809. On February 8, 2006, Dr. Bartley noted that plaintiff continued to have constant neck and shoulder pain and was unable to perform her job duties as a radiology technician. AR 689. Because there was no sedentary position available to her at Ortho Link, she needed to be on total disability. AR 689. One of LINA's internal physicians also concluded that the "medical record review reveals a history and findings that support the imposed restrictions." AR 595-97. Thus, based on this evidence, LINA awarded long-term disability benefits to Smith. AR 296, 593. After being awarded benefits, Smith continued to receive treatment. She was seen by a number of treating physicians, including Dr. McDowell, Dr. Brian Luft, and Dr. W. L. Greg Siefert.

LINA contacted Smith on July 6, 2007 to inform her that as of January 12, 2008 she would have received disability benefits for 24 months and under the terms of the policy the definition of

disability would change. AR 278. LINA would determine if she continued to be eligible for benefits under the "any occupation" standard in the policy, as opposed to the "regular occupation" standard in that policy that had been governing her claim up to January 12, 2008. AR 278.

Dr. Luft completed a physical ability assessment form on October 2, 2007. AR 429 - 430. He concluded that Smith could occasionally stand and walk (less than 2.5 hours in an 8 hour day), and that she could frequently sit between 2.5 and 5.5 hours. AR 429. She could occasionally reach over head, reach at desk level, reach below the waist, do simple grasping with her right and left hand, and firm grasping with her right and left hand. AR 429. He noted she had increased pain when reaching overhead and at desk level, and when using her hands for firm grasping, so she would only be able to do these things infrequently. AR 430.

On October 23, 2007, a LINA representative contacted Dr. Luft and spoke with him about Smith's work-related abilities. AR 63. During this phone call, Dr. Luft indicated that Smith could do full-time sedentary work if it allowed for frequent position changes. AR 63. With respect to the prior written restrictions, Dr. Luft indicated that he had not conducted any objective evaluation of Smith's upper extremity abilities, including range of motion, strength, dexterity or coordination. AR 63.

On October 17, 2007, Dr. Lisa Choung, a doctor in Dr. McDowell's practice, signed a form that addressed Smith's work related abilities. AR 437-438. Dr. Choung indicated that Smith found that even light housekeeping, personal hygiene, and meal

preparation had to be done in short segments with rests in between all activities, as her pain elevated easily with minimal strain on her body. AR 437. In response to question six that stated "[w]hat prevents [the patient] from performing, on a fulltime basis, sedentary work?" Dr. Choung answered "chronic, intractable pain and use of opioid medications." AR 437. In response to question seven that stated "[p]lease provide specific restrictions and limitations applicable to your patient's current medical condition" Dr. Choung answered "[r]estrictions are limited based on not only her chronic pain, cervical and lumbar DDD, but also by the spinal cord stimulator. She is limited to lifting no greater than 5-10 lbs, she should not lift her hands above her head, or bend/flex forward for prolonged periods of time (i.e. > 3 minutes) as her stimulator will produce an increase sense of stimulation." AR 438.

A LINA representative contacted the offices of Dr. McDowell for additional information. AR 59. The representative confirmed that Smith's physical restrictions were those outlined in question seven of the October 17, 2007 form. AR 57, 59.

LINA sought an opinion from Vince Engel, a Rehabilitation Specialist. AR 415-416. Mr. Engel performed a Transferable Skills Analysis based upon a review of the file. He focused on work experience, education and training, medical restrictions, the wage requirement ($2,845.58 per month), and transferable skills that Smith's records indicated she had as an employee that were not lost as a result of her physical condition. AR 415. Mr. Engel's analysis identified four occupations that Smith could perform. AR 415. These occupations were coordinator for

volunteer services, coordinator for a skill-training program, a contact representative, and a CSR Supervisor. AR 415.

On November 7, 2007, LINA sent a letter to Smith informing her that she was not eligible to continue receiving long-term disability benefits after January 11, 2008. AR 410-414. It recited the definition of disability, stating that in order to be considered disabled, after benefits had been paid for 24 months, Smith must be unable to perform all the material duties of "any occupation" for which she may reasonably be qualified. AR 411. It pointed out the definition of "sedentary" from the Dictionary of Occupational Titles and explained that it meant

> [e]xerting up to 10 pounds of force occasionally or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

AR, 412.

LINA also referred to the form submitted by Dr. Choung, noting that although Dr. Choung stated Smith could not perform sedentary work, Dr. Choung also noted that Smith was limited to lifting no greater than 5-10 pounds, should not lift her hands over her head, and should not bend forward for prolonged periods of time. AR 411. LINA explained that a representative had called the office and was informed that Smith's restrictions and limitations were contained in question number seven on the form filled out by Dr. Choung. AR 411. LINA also referenced the physical ability assessment submitted by Dr. Luft and the conversation LINA had with Dr. Luft over the telephone where Dr.

Luft informed LINA that Smith was capable of performing sedentary work as long as it allowed for frequent position changes. AR 411-412.

Plaintiff appealed the termination decision twice. The first appeal was denied in a letter dated August 7, 2008, and the second was denied in a letter dated April 7, 2009. AR 270-71, 257-259. In support of her appeals, plaintiff submitted a psychological evaluation report prepared by Nicolaas P. Dubbeling, Ph.D. on February 4, 2008. AR 270, 393-405. In his report, Dr. Dubbeling mentions that plaintiff continued to volunteer for the Zanesville Animal Shelter three days per month and at Pet Smart one day per month. AR 394. She took animals to nursing homes for the enjoyment of residents and to interact with them. AR 394. She was also involved in fund-raising for the shelter. AR 395.

Dr. Dubbeling's opinions are based upon his interview of Smith, the results of a test referred to as the MMPI-2, and his review of medical records. AR 393-400. Dr. Dubbeling concluded that Smith has dysthymic disorder, chronic pain disorder, and a global assessment of functioning of 50. AR 400.[3] He opined that her condition was likely to deteriorate if she was placed under stress, particularly the stress of a job and that she would likely become more depressed and perceive more pain.  AR 403.

Also in support of her appeal, Smith submitted a favorable decision on Social Security Disability ("SSDI") benefits. AR 14,17, 300-303. The Social Security documentation in the record

_____

[3]The significance of Smith's global assessment of functioning level was not explained to this court by the parties nor was it explained in the record.

10

indicates that a favorable medical decision was made by the Social Security Administration ("SSA"), but does not explain the reasoning behind that decision. AR 300. Smith received a favorable determination without a hearing. AR 300. It explains that Smith became disabled as of October 13, 2005, but that her entitlement to benefits began in April 2006. AR 301. It stated she would receive $30,100 for money due between April 2006 and March 2008. AR 301. Smith's counsel, Mr. Gerstner, informed LINA that the psychological evaluation report of Dr. Dubbeling of February 4, 2008, aided in his client's award of social security disability benefits and "should be relevant to [LINA's] review as well." AR 17.

Smith also submitted a vocational assessment performed by Richard P. Oestreich, Ph.D., on July 27, 2008. AR 270, 372-0383. Dr. Oestreich reviewed Smith's medical file and interviewed Smith over the phone. AR 373, 379. Dr. Oestreich concluded that "from the issues diagnosed by the professionals in the psychological realm as well as in the physical that the pain and physical restrictions as well as the emotional overlay caused by Mrs. Smith's various conditions prevent her from doing any work in the economy." AR 378. He stated that she has acquired no skills from her previous profession that would transfer to any work that she would realistically be able to do. AR 378. He stated "it is this witness's opinion, based upon the medical evidence, that Mrs. Smith is not able to do any work in the economy at any exertional or skill level" and that in light of "her long and effective work history, it is obvious that she would be working if she were able to do so." AR 378.

When Smith visited Dr. Seifert on July 21, 2008, his report indicated that when she worked in her flower garden her pain increased, but her pain during the appointment was only a two or three out of ten because "she has not done anything yet." AR 335. On August 1, 2008, Ms. Smith saw Dr. Siefert for facet injections and trigger point injections. AR 333-34. These treatments provided her with "almost 100% relief" of her thoracic area pain, leaving her with "some residual neck pain of 4 out of 10 and also continues to have some chronic low back pain at 3 out of 10." AR 332. According to Dr. Siefert, Ms. Smith seemed to be pleased at that time. AR 332. Ms. Smith saw Dr. Siefert for injections again in December of 2008. AR 327, 328. In January 2009, Dr. Siefert noted that Smith had neck pain that radiated into both sides of her neck and shoulders and that her major issues were her neck pain and headaches. AR 325. In March 2009, Plaintiff was seen by Dr. Siefert and he noted she continues to have low back and bilateral leg pain. AR 322. She rated her neck pain as a 7 and her back pain as a 5. AR 322.

In the process of reviewing Smith's appeal, LINA also obtained additional opinions. A Behavioral Health Specialist reviewed Dr. Dubbeling's report and found that the report did not provide any evidence of a severe psychiatric functional impairment. AR 271, 386. In addition, there was no current documentation indicating that Smith was treating with a mental health provider. AR 271. Plaintiff's vocational assessment from Dr. Oestreich was reviewed by a Vocational Rehabilitation Counselor, who determined that Smith did have transferable work skills. AR 271, 367. Finally, LINA's Medical Director, Dr. Paul Seiferth, reviewed the records of Dr. Seifert's treatment of

12

Smith, along with other medical evidence in the file. AR 258, 318-19. He determined that the information in the file did not demonstrate that she was unable to work at a sedentary level. AR 318-319.

IV. Analysis of LINA's Decision

The record reveals that plaintiff was found to be ineligible for disability benefits following two appeals which included review of the following information: a physical ability assessment of Dr. Luft, one of Smith's treating physicians, and a follow-up phone call with Dr. Luft; the questionnaire signed by Dr. Choung, one of the doctors in Dr. McDowell's practice, and a follow up phone call with that office; the transferable skills analysis of Mr. Engel; the psychological evaluation report of Dr. Dubbeling; the vocational assessment of Dr. Oestreich; records from Smith's treating physician, Dr. Siefert; a review by a behavioral health specialist of Dr. Dubbeling's report; a review by a vocational rehabilitation counselor of Dr. Oestreich's report; and a file review by Dr. Seiferth, LINA's medical director.

Under the LINA policy, Smith is required to submit "[s]atisfactory proof of Disability ... to the Insurance Company, at the Employee's expense, before benefits will be paid." AR 240. Thus, Smith bore the burden of producing sufficient evidence of her disability to satisfy LINA. See Ruttenberg v. U.S. Life Ins. Co. in City of New York, 413 F.3d 652, 663 (7th Cir. 2005)(holding that ERISA plaintiff seeking to enforce benefits under the policy bears burden of proving his entitlement to contract benefits); Seiser v. UNUM Provident Corp., 135 Fed. Appx. 794, 797 (6th Cir. April 22,

2005)(plaintiff bore burden of proving eligibility for disability benefits under terms of policy); <u>Abnathya v. Hoffmann-La Roche, Inc.</u>, 2 F.3d 40, 46 (3d Cir. 1993)(plaintiff bore burden under plan to submit medical evidence to support eligibility for benefits); <u>Miller v. Metropolitan Life Ins. Co.</u>, 925 F.2d 979, 985 (6th Cir. 1991)(rejecting argument that once disability benefits are conferred, burden of proof lies with the insurance company to prove that employee can return to former employment).

The administrative record reveals that plaintiff's initial functional capacity report from September 1, 2005, indicated she was capable of sedentary work. AR 615-620. As there was no sedentary position available for her at Ortho Link, Smith stopped working and collected disability under the initial definition of disability in the LINA policy that she could not perform the duties of her "regular occupation." AR 236, 689. After the definition of disability changed from the "regular occupation" standard to the "any occupation" standard, Smith still did not produce sufficient evidence to compel a finding that she remained disabled. Given the evidence in the record, LINA's decision to deny benefits under the "any occupation" standard was supported by a reasonable explanation and was not arbitrary and capricious.

Most importantly, a LINA representative spoke with Dr. Luft, Smith's treating physician, in October of 2007. AR 63. Dr. Luft indicated that Smith could do full-time sedentary work if the work allowed for frequent position changes. AR 63. This information was communicated to Smith in the November 7, 2007,

letter denying her benefits and she had the opportunity to respond to it in two subsequent appeals. AR 412.

Although Dr. Choung, a doctor who practiced with Smith's treating physician, Dr. McDowell, indicated on a form that Smith was incapable of performing sedentary work, this answer is inconsistent with Dr. Choung's answer in question 7 that stated Smith was only "limited to lifting no greater than 5-10 lbs, ... should not lift her hands above her head, or bend/flex forward for prolonged periods of time ... as her stimulator will produce an increase sense of stimulation." AR 438. These restrictions are consistent with the definition of sedentary work from the Dictionary of Occupational Titles noted above. AR 412. Given these inconsistencies on the form, it is reasonable that LINA would credit the opinion of Dr. Luft over the opinion of Dr. Choung. See McDonald, 347 F.3d at 169 (noting that generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation for the decision). Moreover, LINA's representative spoke with the Nurse Practitioner who completed the medical restrictions form signed by Dr. Choung and the Nurse Practitioner confirmed that Smith's physical restrictions were those outlined in paragraph 7 of the form. AR 57, 59. Nothing in the records of Dr. Seifert, another of plaintiff's treating physicians, indicates that plaintiff was not able to perform sedentary work.

LINA's medical director, Dr. Paul Seiferth, reviewed the medical records in the file, including those of Dr. Seifert. Dr.

Seiferth determined that although Smith continues to treat for chronic pain, the medical evidence did not demonstrate that she was unable to work at a sedentary level. AR 318-319. In the end, Dr. Seiferth simply agreed with Dr. Luft, one of Smith's treating physicians.

Smith argues that LINA should have relied more heavily on the reports of Dr. Dubbeling, Ph.D.(AR 393-405) and Dr. Oestreich (AR 372-383).[4] Dr. Dubbeling prepared his report as medical evidence for a hearing at the Office of Hearing and Appeals. AR 393. He was not treating Smith for psychological impairments. AR 393. The first appeal denial letter plaintiff was sent noted that "there is no documentation to indicate that Ms. Smith is currently treating with a mental health provider." AR 271. This comment can be construed as indicating that LINA accorded less weight to Dr. Dubbeling's report because he was not Smith's treating physician. LINA's behavioral health specialist reviewed Dr. Dubbeling's report and found it incredible. She determined that it "did not provide any evidence of a severe psychiatric functional impairment" or "indication

_____

[4]LINA has argued to this court that the policy, which limits benefits for mental illness to 24 months, prevents LINA from considering the reports of Dr. Dubbeling and, to a more limited extent, Dr. Oestreich, because their reports are based on Smith's mental illness. However, none of LINA's decisions denying Smith benefits discussed the mental illness limitation in the policy and instead simply disagreed with the mental illness findings. AR 410-414, 270-271, 257-259. This court cannot consider defendant's post hoc explanations for its decision. University Hospitals of Cleveland v. Emerson Electric Co., 202 F.3d 839, 849 n.7 (6th Cir. 2000)(administrators and their attorneys are not permitted to "shore up" a decision after-the-fact by testifying as to the "true" basis for the decision after the matter is in litigation).

that Ms. Smith's condition has severely affected her global, psychiatric function." AR 271, 386.

In addition, the insurance policy requires that to be disabled, an employee must be under the "appropriate care of a Physician." AR 240. This means that Smith must have care that "conforms to generally accepted medical standards, including frequency of treatment and care." AR 251. Thus, LINA's comment that Smith was not "currently treating with a mental health provider" could also reasonably be construed as a reference to the "appropriate care" component of the policy's requirements for total disability. Because Smith was not treating her mental illness with "appropriate care," namely, regular visits to a mental health care provider, LINA's reference to the fact that Smith was not "currently treating with a mental health provider" can reasonably be construed as a finding by LINA that Smith was not disabled by mental illness under the "appropriate care" provisions of the policy.

As for Dr. Oestreich's vocational assessment, Dr. Oestreich indicated he relied, at least in part, on the psychological assessment of Dr. Dubbeling, which was reasonably rejected by LINA for the reasons noted above. Moreover, Dr. Oestreich's report was also reviewed by a Vocational Rehabilitation Counselor at LINA's request. The counselor rejected it in favor of the prior assessment done by Rehabilitation Specialist Vince Engle. LINA 367, 415, 271. In light of the physical restrictions described by Dr. Choung, Dr. Luft's opinion that plaintiff was capable of sedentary work, and the reports by both the Vocational Rehabilitation Counselor and Rehabilitation

17

Specialist, LINA's decision to reject the opinions contained in Dr. Oestreich's report was reasonable.

Smith argues that LINA's decision to deny benefits was arbitrary and capricious because LINA was operating under a conflict of interest by both paying and administering claims. While this is a factor to be considered in weighing the reasonableness of LINA's decision, it is not sufficient to render LINA's decision arbitrary and capricious in light of the evidence discussed above that Smith was capable of performing sedentary work. In addition, there is no evidence that LINA based its decision on the costs associated with Smith's disability benefits. See Peruzzi v. Summa Medical Plan, 137 F.3d 431, 433 (6th Cir. 1998).

Smith also argues that LINA's decision was arbitrary and capricious because it did not consider the SSA award of SSDI benefits. A claim for benefits under an ERISA plan will turn on the interpretation of plan terms that are often different from SSA criteria, and "[a]n ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan." Whitaker, 404 F.3d at 949. Although the SSA determination is not meaningless and should not be entirely disregarded, the SSA determination is just one factor the court should consider in determining whether a decision was arbitrary or capricious. Calvert, 409 F.3d at 292, 295.

While there is "no technical requirement to explicitly distinguish a favorable Social Security determination in every case, '[i]f the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2)

18

financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary and capricious.'" <u>Delisle v. Sun Life Assur. Co.</u>, 558 F.3d 440, 446 (6th Cir. Mich. 2009)(quoting <u>Bennett v. Kemper Nat'l Servs.</u>, 514 F.3d 547, 554 (6th Cir. 2008).

Applying the <u>Bennett</u> test to the facts of this case, the record does indicate LINA required Smith to apply for SSDI benefits. The policy states that LINA may reduce the disability benefits payable to the employee by any amount of Social Security disability benefits the employee receives or is assumed to receive (AR 242) and that LINA will assume the employee is receiving social security benefits if the employee is eligible for them (AR 243). It also states that LINA, at its discretion, will assist the employee in applying for social security disability benefits. AR 243-244. A reimbursement agreement in the record, signed by Smith, indicates that Smith agreed to apply for SSDI benefits and reimburse LINA if she received those benefits, and that, in exchange, LINA would not reduce her benefits by some assumed amount. AR 766. Thus, it appears from the record that LINA planned on reducing Smith's benefits by some assumed amount unless she applied for SSDI benefits and agreed to reimburse LINA if awarded those benefits. The policy language had the practical effect of requiring Smith to seek social security benefits.

In addition, LINA now seeks to financially benefit from Smith's receipt of social security benefits. LINA has filed a

19

counterclaim seeking reimbursement of the social security payments that can be attributed to the period during which Smith was receiving long-term disability benefits. Doc. 7, p. 4-5. Furthermore, in the final decision denying Smith benefits, LINA did not distinguish or explain why it disagreed with the SSA decision. In fact, LINA does not cite the SSA decision at all. AR 270-271, 257-259.

Although LINA's disagreement with the SSA decision weighs against them, that weight is not enough to tip the scale in Smith's favor given the medical evidence in the record. See Morris v. Am. Elec. Power Long-Term Disability Plan, No. 08-4412, 2010 U.S. App. LEXIS 21336 at *21 (6th Cir. 2010) ("[T]he language of Bennett indicates only that the SSA award be weighed in favor of a finding that the decision was arbitrary and capricious, not that such a decision was arbitrary and capricious per se."). As noted above, Smith's own treating physician, Dr. Luft, told LINA that Smith could do full-time sedentary work if the work allowed for frequent position changes. AR 63. Given that this information was relayed over the telephone to LINA, there is no reason to believe that the SSA had the benefit of this information at the time it made its decision. Dr. Choung described Smith's restrictions in a way that was consistent with the definition of sedentary work. AR 437-438. To rebut this evidence, Smith put forth only the reports of Dr. Dubbeling and Dr. Oestreich, both of whom relied on her psychological complaints despite the fact that she was not receiving treatment for these complaints. In light of this less-than-persuasive evidence submitted by Smith, LINA's decision to rely on the medical evidence indicating that Smith

20

was capable of full-time sedentary work despite the award of SSA benefits was not arbitrary and capricious.

In Delisle and in Bennet, the Sixth Circuit found that the plan administrator did not engage in a principled, deliberative reasoning process, and therefore, the failure to acknowledge the social security disability determination weighed heavily in finding that the administrator acted arbitrarily and capriciously. See Delisle, 558 F.3d at 448; Bennett, 514 F.3d at 555-556. Here, in contrast, there is ample medical evidence to support LINA's decision, and therefore the fact that LINA did not specifically refer to the SSA decision in its denial letters holds less weight, particularly because the SSA award of benefits contained no explanation for the award of benefits. Plaintiff cites the unreported case of Mikolajczyk v. Broadspire Services, Inc., Case No. 3:05 CV 7039, 2006 WL 2583391 (N.D.Ohio Sept. 6, 2006) and argues these it is substantially similar to Smith's case. However, in Mikolajczyk, the court found overwhelming evidence that plaintiff was disabled. Id. 2006 WL at *16-17. Here, there is no overwhelming evidence of total disability; in fact, plaintiff's own treating physician indicated she was capable of sedentary work. "A plan administrator's determination is not arbitrary and capricious when a reasoned explanation, based on the evidence, supports that determination." Whitaker, 404 F.3d at 950. Here, LINA's decision meets this standard.

Upon considering the evidence in the administrative record and all of the relevant factors discussed above, the court concludes that LINA offered a reasoned explanation for its decision to deny benefits, which was amply supported by medical

21

evidence and expert opinion. LINA's decision to deny benefits was not arbitrary and capricious.

## V. LINA's Counterclaim

LINA has also filed a counterclaim for overpayment of benefits. Plaintiff has offered no opposition to this counterclaim. The administrative record in this case demonstrates that Ms. Smith received a lump-sum payment of $30,100 from the SSA in 2008, and that $27,052 of this amount can be attributed to the period during which she was receiving long-term disability benefits. AR 300-303. LINA has filed a counterclaim for reimbursement of the SSA-related overpayment.

In an action under ERISA, a civil action may be brought by a fiduciary to "obtain other appropriate equitable relief." 29 U.S.C. 1132(a)(3)(B). In interpreting this provision, the U.S. Supreme Court in Sereboff v. Mid Atlantic Medical Services, Inc. has interpreted this provision as authorizing not only equitable restitution, but also a fiduciary's action to enforce an "equitable lien established by agreement." 547 U.S. 356, 368 (2006). Such an agreement must specifically identify a particular fund distinct from the defendant's general assets, and a particular share of that fund to which the plan was entitled. Id. at 363. The Sixth Circuit has since applied Sereboff in an unpublished decision in the context of an insurer/administrator of an ERISA plan who sought to recover overpayment of benefits due to receipt of social security disability income. See Gilchrest v. Unum Life Ins. Co. of Am., 255 Fed. Appx. 38 (6th Cir. Ohio Oct. 17, 2007). There, the court stated that

> the Plan's overpayment provision asserts a right to
> recover from a specific fund distinct from
> [plaintiff's] general assets--the fund being the
> overpayments themselves--and a particular share of
> that fund to which the plan was entitled--all
> overpayments due to the receipt of Social Security
> benefits, but not to exceed the amount of benefits
> paid.

Id. at 45-46.

On December 21, 2005, Smith signed a Reimbursement Agreement which provided:

> If I later receive Other Benefits for myself or my
> dependents, if applicable, I agree to reimburse the
> full amount of any overpayment within 30 days after
> receiving the award. In addition, I understand that
> the Insurance Company, at its option, will retain any
> future benefits payable, including Minimum Monthly
> Benefits, and use it to reduce the overpayment not
> refunded within 30 days. The Insurance Company
> reserves the right to obtain a lump payment to recover
> an overpayment even if future benefits are being
> withheld.

AR 766.

Similar to Gilchrest, LINA's policy authorizes LINA to reduce Smith's disability benefits by the amount received from a particular fund, in this case, social security disability benefits. AR 242. The reimbursement agreement limits reimbursement to the amount of overpayment. AR 766. Thus, defendants are entitled to prevail on their counterclaim. Because this court does not have a current accounting of the amount which is owed to the defendant as a result of its overpayment of benefits, defendant shall provide to this court evidence in support of the amount to which they claim they are entitled, in accordance with Federal Rule of Civil Procedure 56,

by March 7, 2011. Plaintiff shall have 21 days to respond and defendant shall have 14 days to reply.


VI. Conclusion

Upon review of the administrative record, the court concludes that LINA's determination is rational in light of the policy's provisions, <u>Yeager</u>, 88 F.3d at 381, and that it is possible to offer a reasoned explanation for LINA's decision based upon the evidence. <u>McDonald</u>, 347 F.3d at 169.  Thus, LINA's determination is not arbitrary and capricious. Accordingly, defendant's motion for judgment on the administrative record (Doc. 18) is granted.  Plaintiff's motion for judgment on the administrative record (Doc. 17) is denied.


IT IS SO ORDERED.


<u>s\James L. Graham</u>
James L. Graham
United States District Judge


Date: February 25, 2011

24